**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                              Case No.  02-36290

STETSON & ASSOCIATES, INC.

            Debtor


      ANN MOSTOLLER, TRUSTEE

            Plaintiff

        v.                              Adv. Proc. No. 04-3234

CITICAPITAL COMMERCIAL CORPORATION
SUCCESSOR-IN-INTEREST TO
ASSOCIATES COMMERCIAL
CORPORATION and ASSOCIATES
COMMERCIAL CORPORATION

            Defendants


**<u>M E M O R A N D U M</u>**


**APPEARANCES:**   MILLER & ASSOCIATES, PLLC
                   Mary D. Miller, Esq.
                   Post Office Box 26230
                   Knoxville, Tennessee  37912
                   Attorneys for Plaintiff

                 JAMES A. FIELDS, P.C.
                   James A. Fields, Esq.
                   6400 Lee Highway
                   Suite 103
                   Chattanooga, Tennessee  37421
                   Attorneys for Defendants


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Presently before the court are the following matters:  (1) the Motion for Relief from the Automatic Stay and for Abandonment by the Chapter 7 Trustee (Motion for Relief), filed by the Defendant, CitiCapital Corporation (Defendant), in the Debtor's case on April 8, 2004, seeking relief from the automatic stay pursuant to 11 U.S.C.A. § 362(d) (West 2004) to permit it to foreclose its liens encumbering equipment of the Debtor and requesting an order directing the Chapter 7 Trustee, Ann Mostoller (Plaintiff), to abandon her interest in the equipment as burdensome or of inconsequential value to the estate pursuant to 11 U.S.C.A. § 554(b) (West 2004); and (2) the Complaint to Avoid Liens (Complaint) filed by the Plaintiff on September 16, 2004, seeking to avoid the Defendant's liens encumbering the equipment pursuant to 11 U.S.C.A. § 544 (West 2004).[1]  These matters were consolidated for trial by the court's Order entered on October 15, 2004.

All facts and documents essential for resolution of these matters are before the court upon the Joint Stipulations of Undisputed Facts, Documents, and Issues (Joint Stipulations) filed by the parties on July 15, 2005.  The Brief in Support of Trustee's Objection to Citicapital Commercial Corporation's Motion for Relief from Automatic Stay was filed by the

---

[1] Additionally, upon avoidance of the liens the Plaintiff seeks to recover "[t]he transfer of the Debtor's interest [in] the . . . property . . . pursuant to 11 U.S.C. § 550."  Section 550 concerns the recovery by the Trustee of property that is transferred in violation of § 544 and other avoidance statutes for the benefit of the Debtor's bankruptcy estate.  *See* 11 U.S.C.A. § 550(a) (West 2004).  In the context of lien avoidance, the relevant statute is § 551, which provides that "[a]ny transfer avoided under section . . . 544 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate."  11 U.S.C.A. § 551 (West 2004); *see also Henden v. G.E. Capital Mortgage Servs. (In re Carpenter)*, 266 B.R. 671, 676 (Bankr. E.D. Tenn. 2001) ("Avoidance and recovery are recognized in the Sixth Circuit as two distinct remedies. . . . [T]he Plaintiff may avoid the Defendant's security interest under § 544(a).  Once that occurs, the interest is preserved for the estate's benefit . . . by § 551 . . . .  These events are meaningful in and of themselves and necessitate no additional 'recovery' by the Plaintiff.").  Pursuant to § 541(a)(4), property of the estate includes "[a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551."  11 U.S.C.A. § 541(a)(4) (West 2004).

Plaintiff on July 18, 2005, and the Defendants' Brief of the Issues to be Resolved by the

Court was filed on July 18, 2005.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(G), (K), (O) (West 1993).

# I

Between April 20, 1999 and March 16, 2001, the Debtor purchased the following five

pieces of equipment:  (1) an Ingersoll Rand Model SD100D Roller, s/n 155452, on April 20,

1999; (2) a Komatsu model PC45R-8 Excavator, s/n 5709, with a 26" bucket stock #4293

and a 20" bucket stock #4294 on April 20, 1999[2]; (3) a JCB Skid Loader, s/n 804228, on

April 12, 2000; (4) an Auburn 1000 series Planer/Moulder, s/n 1105, including a log cabin

kit, all motors, and two sets of tooling on January 4, 2001; and (5) a Hydraulic Pineapple

Feed Table, s/n TR-01004-101, on March 16, 2001 (collectively Equipment).  In connection

with these purchases, the Debtor executed security agreements, all of which are currently

held by the Defendant, granting a security interest in each piece of equipment.[3]  In order to

perfect its security interests, the Defendant filed UCC-1 financing statements with the

---

[2] The Defendant's Motion for Relief does not seek stay relief to foreclose on this piece of equipment. Rather, it seeks to foreclose on a Komatsu "Model D65FX12" which the court, pursuant to an Agreed Order Granting Relief from the Automatic Stay and Abandonment by the Chapter 7 Trustee entered on March 18, 2005, directed the Trustee to abandon as a burdensome asset of the estate.  Nevertheless, the court will deem the Motion for Relief to include the Komatsu PC458 Excavator because the parties have included this piece of equipment in their Joint Stipulations and briefs.

[3] The security agreements for the roller, excavator, and skid loader were assigned to Associates Commercial Corporation (Associates) on the dates of purchase, and Associates actually financed the feed table and planer/moulder.  CitiCapital Commercial Corporation is the successor in interest to Associates, and all references in this Memorandum to "Defendant" include both CitiCapital and Associates.

Tennessee Secretary of State on May 9, 1999,[4] May 6, 1999, April 18, 2000, January 9, 2001, and April 9, 2001, respectively (collectively, UCC-1 Financing Statements).

The Debtor filed the Voluntary Petition commencing its bankruptcy case under Chapter 7 on December 2, 2002. The Debtor is a Florida corporation, authorized to do business in the State of Tennessee on June 14, 1999.[5] At all times pertinent to the issues presently before the court, the Debtor's principal office was located at 8601 Egret Point Court, Tampa, Florida. Its principal place of business in the State of Tennessee, as well as its chief executive office (i.e., the place from which the Debtor managed the main part of its business operations) was 2788 Windfall Estate Drive, Sevierville, Tennessee. The Debtor used all of the Equipment in the operation of its business in Tennessee.

In its Motion for Relief, the Defendant avers that the Equipment is not adequately protected and that it lacks equity. The Defendant argues that it holds a claim in the amount of $236,972.16, but the Equipment is only worth $220,500.00. Accordingly, the Defendant asks the court to order the Plaintiff to abandon the Equipment as property of the estate and to grant it relief from the automatic stay to allow it to exercise its rights and remedies under state law.

In opposition, the Plaintiff argues that she has been unable to determine the validity of the Defendant's liens and asks the court to deny the Defendant's Motion for Relief. On

---

[4] *See infra* n.9.

[5] The registered agent for service of process in Tennessee was Daniel E. Stetson, 2788 Windfall Estate Drive, Sevierville, Tennessee 37876.

September 16, 2004, the Plaintiff filed the Complaint, alleging that because the Defendant did not file the UCC-1 Financing Statements for the Equipment in Florida, as required under Revised Article 9 of the Uniform Commercial Code, adopted in both Tennessee and Florida, it does not hold properly perfected security interests in the Equipment. Therefore, the Plaintiff seeks to terminate the Defendant's right, title, and interest in the Equipment pursuant to § 544.

The court consolidated the Motion for Relief and the adversary proceeding, scheduling a trial for July 25, 2005. Prior to trial, the parties asked the court to waive oral argument and decide the matters on stipulations and briefs. On July 18, 2005, the court entered the Order Regarding Joint Motion to Try Matter on Pleadings and Stipulations and to Waive Oral Argument. Pursuant to the Joint Stipulations filed by the parties, the issue before the court is whether the Defendant's security interests in the Equipment were properly perfected or whether it was necessary for the Defendant to also file the UCC-1 Financing Statements in Florida to perfect the security interests.

## II

The Defendant has requested relief from the automatic stay and an order requiring the Plaintiff to abandon the Equipment.[6] Creditors may seek relief from the automatic stay "for cause" including a lack of adequate protection. *See* 11 U.S.C.A. § 362(d)(1). Here, the

---

[6] On December 7, 2004, the court entered an Order authorizing the Plaintiff and the Defendant to dispose of and sell the Equipment, directing them to deposit the proceeds into the trust account of the Defendant's attorney or another agreed upon account. As no report of sale has been filed, the record does not reflect whether all or part of the Equipment, in fact, has been sold.

sole issue for determination is whether the Defendant holds perfected security interests in the Equipment that are not subordinate to the Plaintiff's interests as Chapter 7 Trustee.

At the time the Debtor purchased the Equipment and granted the security interests presently at issue, the proper method of perfection was by filing UCC-1 financing statements with the Tennessee Secretary of State.  *See* TENN. CODE ANN. § § 47-9-302(1), -401(1)(c) (1999, repealed 2000).  In 2000, Tennessee adopted its version of the Revised Uniform Commercial Code, with an effective date of July 1, 2001.  *See* TENN. CODE ANN. § 47-9-701 (2001).  Under current Tennessee law, a valid security interest in most personal property, including the Equipment, is still perfected by filing a financing statement with the Tennessee Secretary of State, unless the debtor is located in another jurisdiction.  TENN. CODE ANN. § 47-9-301(1), -310(a) (2001).  If properly filed, a financing statement is effective for five years from the date of filing.  TENN. CODE ANN. § 47-9-515(a) (2001); *see* former TENN. CODE ANN. § 47-9-403(2)(c) (1999, repealed 2000).

The dispute between these parties arises from the disparity in the former perfection requirements and those now in place under the revised Tennessee Code Annotated.  Under the former version, section 47-9-103 governed "[p]erfection of security interests in multiple state transactions" and provided as follows:

(3)  Accounts, General Intangibles and Mobile Goods

   (a)  This subsection applies to . . . goods which are mobile and which are of a type normally used in more than one (1) jurisdiction, such as motor vehicles, trailers, rolling stock, airplanes, shipping containers, road building and construction machinery, and commercial harvesting machinery and the

6

like, if the goods are equipment . . ., and are not covered by a certificate of title[.]

(b)  The law (including conflict of laws rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest.

. . . .

(d)  A debtor shall be deemed located at his place of business if he has one, [or] at his chief executive office if he has more than one (1) place of business[.]

TENN. CODE ANN. § 47-9-103(3) (1999, repealed 2000).  The parties have stipulated that the Debtor's chief executive office, as defined by former Article 9, was 2788 Windfall Estate Drive, Sevierville, Tennessee, inasmuch as that is the location from which the Debtor managed the majority of its business operations.  Accordingly, even though the Debtor was a Florida corporation, perfection of the security interests in the Equipment was governed by Tennessee law, which required the Defendant to file its UCC-1 financing statements with the Tennessee Secretary of State.

The revisions to the Tennessee Code Annotated significantly changed the laws governing perfection with respect to location:

[T]he following rules determine the law governing perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral:

(1)  Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

(2)  While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral.

7

TENN. CODE ANN. § 47-9-301 (2001).  Now, however, "[a] registered organization that is

organized under the law of a state is located in that state."  TENN. CODE ANN. § 47-9-307(e)

(2001).  Accordingly, under current Tennessee law, because the Debtor is a Florida

corporation, Florida law would dictate how to perfect its security interests in the Equipment,

and the Defendant would be required to file its UCC-1 Financing Statements with the

Florida Secured Transaction Registry, as well as the Tennessee Secretary of State.  *See* FLA.

STAT. ANN. § 679.5011 (West 2003); TENN. CODE ANN. § 47-9-301(2).

In order to ease the transition between the former law and the current law, the latter

includes provisions designed to allow secured creditors to retain their security interests for

certain time periods.  Located in Part 7 of the revised Chapter 9, these statutes set forth the

various continuation periods for both perfected and unperfected security interests.  The

statutes implicated in this case are section 47-9-703, entitled "Security interest perfected

before effective date[,]" and section 47-9-705, entitled "Effectiveness of action taken before

effective date."

Specifically, section 47-9-703(b) addresses the Defendant's security interests as

follows:

> (b)  CONTINUING PRIORITY OVER LIEN CREDITOR; PERFECTION REQUIREMENTS NOT
> SATISFIED. Except as otherwise provided in § 47-9-705, if, immediately before
> July 1, 2001, a security interest is enforceable and would have priority over
> the rights of a person that becomes a lien creditor at that time, but the
> applicable requirements for enforceability or perfection under this act are not
> satisfied on July 1, 2001, the security interest:

8

(1) is a perfected security interest for one (1) year after this act takes effect;

(2) remains enforceable thereafter only if the security interest becomes enforceable under § 47-9-203[7] before the year expires; and

(3) remains perfected thereafter only if the applicable requirements for perfection under this act are satisfied before the year expires.

TENN. CODE ANN. § 47-9-703(b) (2001).

It is undisputed that the Defendant did not file the UCC-1 Financing Statements with the Florida Secured Transaction Registry prior to July 1, 2002. Because sections 47-9-301 and 307(e), as well as Florida Statutes Annotated 679.5011, require the Defendant to file any new UCC-1 financing statements concerning the Equipment in both Florida and Tennessee after July 1, 2001, the Plaintiff argues that the UCC-1 Financing Statements currently on file with the Tennessee Secretary of State no longer constitute perfected security interests in the Equipment. Therefore, the Plaintiff seeks to avoid those interests for the benefit of the Debtor's bankruptcy estate.

By virtue of 11 U.S.C.A. § 544(a), Chapter 7 trustees are empowered with the right to avoid transfers and liens on the debtor's property that could have been avoided by a creditor under applicable local law. *See* 11 U.S.C.A. § 544(a). "The status which [§ 544(a)] confers upon the trustee in bankruptcy is that of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law

---

[7] Section 47-9-203 (2001) concerns attachment and enforceability of security interests, which is not an issue in this case.

of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.'" *Lancaster v. Hurst (In re Hurst)*, 27 B.R. 740, 742 (Bankr. E.D. Tenn. 1983) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D. Miss. 1932)). In other words, this "strong arm" provision allows trustees "to step into the shoes of the hypothetical lien creditor and to avoid any unperfected security interests." *Tibble v. Huntington Nat'l Bank (In re Fasick)*, 234 B.R. 891, 893 (W.D. Mich. 1999). "If the holder of a security interest in the debtor's property fails to perfect that interest prior to the filing of the bankruptcy, the trustee can avoid that interest, reducing the holder to the status of an unsecured creditor." *Walker v. Elam (In re Fowler)*, 201 B.R. 771, 779 (Bankr. E.D. Tenn. 1996). The creation of a lien constitutes a "transfer" under the Bankruptcy Code's definition, *Hendon v. Gen. Motors Acceptance Corp. (In re B & B Utils., Inc.)*, 208 B.R. 417, 421 (Bankr. E.D. Tenn. 1997), and the "failure to file a proper financing statement makes any lien subject to avoidance under section 544." *In re Grubbs Constr. Co.*, 319 B.R. 698, 722 (Bankr. M.D. Fla. 2005).

Although the rights and powers acquired by a Chapter 7 trustee are vested by virtue of the Bankruptcy Code, they are determined through applicable state law. *See Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995). Likewise, the method for achieving perfection of a security interest and the time at which a security interest is perfected are matters of state law. *B & B Utils., Inc.*, 208 B.R. at 421. Under Tennessee law, "[a] perfected security interest . . . has priority over a conflicting unperfected security interest[.]" TENN. CODE ANN. § 47-9-322(a)(2) (2001). A lien creditor, which includes a

10

trustee in bankruptcy pursuant to Tennessee Code Annotated section 47-9-102(52)(C)
(2001), also takes priority over unperfected security interests.  TENN. CODE ANN. § 47-9-317
(2001).  Based upon these statutes, the Plaintiff would take priority over any of the Debtor's
secured creditors holding unperfected security interests on the petition date, thereby being
authorized to avoid those interests under her § 544(a) "strong arm" powers.

Armed with section 47-9-703(b), it would appear that the Plaintiff's argument is
correct, that because the Defendant did not file any UCC-1 financing statements with the
Florida Secured Transaction Registry before July 1, 2002, its security interests in the
Equipment were no longer perfected at the time that the Plaintiff stepped into the shoes of
"the ideal creditor" on December 2, 2002.  However, section 47-9-703(b) expressly states
that this rule applies "[e]xcept as otherwise provided in § 47-9-705[.]"  TENN. CODE ANN.
§ 47-9-703(b).  As it relates to this case, section 47-9-705(c) provides as follows:

> (c)  PRE-EFFECTIVE-DATE FILING IN JURISDICTION FORMERLY GOVERNING PERFECTION.
> This act does not render ineffective an effective financing statement that,
> before July 1, 2001, is filed and satisfies the applicable requirements for
> perfection under the law of the jurisdiction governing perfection as provided
> in former § 47-9-103.  However, except as otherwise provided in subsections
> (d) and (e) and § 47-9-706[8], the financing statement ceases to be effective
> at the earlier of:
>
> > (1) the time the financing statement would have ceased to be effective
> > under the law of the jurisdiction in which it is filed; or
> >
> > (2) June 30, 2006.

TENN. CODE ANN. § 47-9-705(c) (2001).

---

[8] These statutes concern continuation statements and statements filed against transmitting utilities,
and thus, are not applicable in this case.

11

The Plaintiff argues that because subsection (c)(1) does not reference the "former" law of the jurisdiction in which it was filed, but rather, states that a financing statement is ineffective when it would have ceased to be effective under the law of the jurisdiction in which it is filed, the statute means the "current" law; i.e., the Revised Article 9. Under that scenario, because the current law requires filing in both Florida and Tennessee, the Plaintiff argues that the Defendant's perfection became ineffective pre-petition, on July 1, 2002, pursuant to section 47-9-703(b)(1). The Defendant, however, argues that the plain language of the statute requires a different interpretation, that the UCC-1 Financing Statements were effective until the earlier of their lapse under the former Tennessee Code Annotated, which was five years after they were filed, or until June 30, 2006.

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). When the parties derive different interpretations from the statutory language, the court must determine if the language of the statute, after applying its ordinary and plain meaning, is ambiguous. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). "When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning or application[, but if] the language of the statute is ambiguous, the court must examine the entire statutory scheme and the legislative history to ascertain and give effect to the legislative intent." *Galloway v. Liberty Mut. Ins. Co.*, 137 S.W.3d 568, 570 (Tenn. 2004); *see also Parks*, 974

12

S.W.2d at 679.  This includes consideration of the Comments to the Official Text (Official Comments) if they will aid in determining legislative intent and statutory construction.  *See Plains Cotton Coop. Ass'n of Lubbock Tex. v. Julien Co.*, 141 B.R. 359, 370 (Bankr. W.D. Tenn. 1992).  Tennessee courts generally give "substantial deference" to the Official Comments. *Letellier v. Letellier*, 40 S.W.3d 490, 493 n.2 (Tenn. 2001).  "[W]hile not binding, [they] are very persuasive in interpreting the statute to which they apply.  The comments give some insight into the intent of the overall scheme of the statute as contemplated by the General Assembly in adopting the language of the statute."  *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997).

The court finds that section 47-9-705(c) is ambiguous, in that "reasonable persons can find different meanings in [the] statute." BLACK'S LAW DICTIONARY 79 (6th ed. 1994). Because the court is required to ascertain and give effect to the intent of the General Assembly, it is necessary to focus on the statutory scheme and look to the Official Comments to both statutes for guidance.  With respect to the statutory scheme, it appears that by referencing section 47-9-705 as an exception to the one-year reperfection period in section 47-9-703(b)(1), the General Assembly intended for the one-year period not to apply to the financing statements described in section 47-9-705(c), which applies exclusively to former section 47-9-103 governing perfection in multiple state transactions.  This observation is buttressed by the Official Comments.

The Official Comments to section 47-9-703 state, in material part:

2. Security Interests Enforceable and Perfected Under Former Article 9 but Unenforceable or Unperfected Under This Article. Subsection (b) deals with security interests that are enforceable and perfected under former article 9 or other applicable law immediately before July 1, 2001, but do not satisfy the requirements for enforceability (attachment) or perfection under this article. Except as otherwise provided in section 9-705 [§ 47-9-705], these security interests are perfected for one year after July 1, 2001. If the security interest satisfies the requirements for attachment and perfection within that period, the security interest remains perfected thereafter. If the security interest satisfies only the requirements for attachment within that period, the security interest becomes unperfected at the end of the one-year period.

Tenn. Code Ann. § 47-9-703 (Off. Cmts.). Like the statute itself, this Official Comment

directs the court to section 47-9-705. The Official Comments to that section provide, in

material part, as follows:

4. Perfection by Filing: Change in Applicable Law or Filing Office. Subsection (c) provides that a financing statement filed in the proper jurisdiction under former section 9-103 [governing multiple state transactions] remains effective for all purposes, despite the fact that this article would require filing of a financing statement in a different jurisdiction or in a different office in the same jurisdiction. This means that, during the early years of this article's effectiveness, it may be necessary to search not only in the filing office of the jurisdiction whose law governs perfection under this article but also (if different) in the jurisdiction(s) and filing office(s) designated by former article 9. To limit this burden, subsection (c) provides that a financing statement filed in the jurisdiction determined by former section 9-103 becomes ineffective at the earlier of the time it would become ineffective under the law of that jurisdiction or June 30, 2006. The June 30, 2006, limitation addresses some nonuniform versions of former article 9 that extended the effectiveness of a financing statement beyond five years. . . . .

Subsection (c) is an exception to section 9-703(b) [§ 47-9-703(b)]. Under the general rule in section 9-703(b) [§ 47-9-703(b)], a security interest that is enforceable and perfected on the effective date of this Article (July 1, 2001), is a perfected security interest for one year after this article takes effect, even if the security interest is not enforceable under this article and the applicable requirements for perfection under this article have not been met. However, in some cases subsection (c) may shorten the one-year period of perfection; in others, if the security interest is enforceable under section 9-203 [§ 47-9-203], it may extend the period of perfection.

14

Tenn. Code Ann. § 47-9-705 (Off. Cmts.).  To further clarify, the Official Comments then

provide the following Example 1:

> On July 3, 1996, D, a State X corporation, creates a security interest in certain
> manufacturing equipment located in State Y.  On July 6, 1996, SP perfects a
> security interest in the equipment under former article 9 by filing in the office
> of the State Y Secretary of State.  See former section 9-103(1)(b).  This article
> takes effect in States X and Y on July 1, 2001.  Under section 9-705(c) [§ 47-
> 9-705(c)], the financing statement remains effective until it lapses in July
> 2001, after which it lapses.  Had SP continued the effectiveness of the
> financing statement by filing a continuation statement in State Y under former
> article 9 before July 1, 2001, the financing statement would have remained
> effective to perfect the security interest through June 30, 2006.  See
> subsection (c)(2). . . .

Tenn. Code Ann. § 47-9-703 (Off. Cmts.).

These Official Comments, along with the language of the statutes, make it clear that

the Defendant's UCC-1 Financing Statements were perfected at the time the Debtor filed for

bankruptcy in December 2002, and, therefore, the Plaintiff cannot avoid the Defendant's

liens upon the Equipment.  The Defendant filed the UCC-1 Financing Statements in 1999

through 2001, all prior to July 1, 2001, and subject to the former article 9 provisions set

forth in former section 47-9-103(3), which required filing only with the Tennessee Secretary

of State.  Pursuant to current section 47-9-705(c), which is undeniably an exception to

section 47-9-703(b), that perfection continued until the earlier of the original five-year lapse

time for each UCC-1 Financing Statement, or until June 30, 2006.

The Defendant filed its UCC-1 Financing Statements as follows:  (1) on May 6, 1999, for the Komatsu Excavator; (2) on May 9, 1999, for the Ingersoll Rand Roller[9]; (3) on April 18, 2000, for the Skid Loader; (4) on January 9, 2001, for the Auburn Planer/Moulder; and (5) on April 9, 2001, for the Hydraulic Pineapple Feed Table.  Under both current and former Article 9 provisions, each Financing Statement was effective for five years from the date upon which it was filed, at which time it lapsed, absent the filing of a continuation statement in compliance with the current statute.  *See* TENN. CODE ANN. §§ 47-9-515(a); -705(d) (concerning continuation statements); former TENN. CODE ANN. § 47-9-403(2)(c) (1999, repealed 2000).  The Defendant has not filed any additional UCC-1 financing statements or any continuation statements.  Therefore, three of its original Financing Statements have lapsed:  (1) the Financing Statement filed on May 6, 1999, for the Komatsu Excavator, lapsed on May 6, 2004; (2) the Financing Statement filed on May 9, 1999, for the Ingersoll Rand Roller, lapsed on May 9, 2004; and (3) the Financing Statement filed on April 18, 2000, for the JCB Skid Loader, lapsed on April 18, 2005.  The two remaining Financing Statements, on the Auburn Planer/Moulder and the Hydraulic Pineapple Feed Table, are scheduled to lapse on January 9, 2006, and April 9, 2006, respectively.

The effects of lapse are addressed in section 47-9-515(c), which provides that

---

[9] This is the date stipulated by the parties.  The Financing Statement attached as an exhibit to the Complaint evidences that the UCC-1 Financing Statement relating to the Ingersoll Rand Roller was filed twice, on April 29, 1999, and on May 6, 1999.  The court will adhere to the dates agreed upon by the parties in the Joint Stipulations.

16

(c)  LAPSE AND CONTINUATION OF FINANCING STATEMENT.  The effectiveness of a
filed financing statement lapses on the expiration of the period of its
effectiveness unless before the lapse a continuation statement is filed pursuant
to subsection (d) [stating when a financing statement may be filed].  Upon
lapse, a financing statement ceases to be effective and any security interest or
agricultural lien that was perfected by the financing statement becomes
unperfected, unless the security interest is perfected otherwise.  If the security
interest or agricultural lien becomes unperfected upon lapse, it is deemed
never to have been perfected as against a purchaser of the collateral for value.

TENN. CODE ANN. § 47-9-515(c) (2001).  This section differs from the former section

47-9-403(e) (1999, repealed 2000), which stated that lapsed security interests were deemed

to have been unperfected against purchasers and lien creditors before lapse.  As explained

in the following Official Comments to section 47-9-515, revised Article 9 made changes with

respect to lapse and its effect in bankruptcy cases:

4.  Effect of Debtor's Bankruptcy.  Under former section 9-403(2), lapse was
tolled if the debtor entered bankruptcy or another insolvency proceeding.
Nevertheless, being unaware that insolvency proceedings had been
commenced, filing offices routinely removed records from the files as if lapse
had not been tolled.  Subsection (c) deletes the former tolling provision and
thereby imposes a new burden on the secured party:  To be sure that a
financing statement does not lapse during the debtor's bankruptcy.  The
secured party can prevent lapse by filing a continuation statement, even
without first obtaining relief from the automatic stay.  See Bankruptcy Code
section 362(b)(3).  Of course, if the debtor enters bankruptcy before lapse,
the provisions of this article with respect to lapse would be of no effect to the
extent that federal bankruptcy law dictates a contrary result (e.g., to the
extent that the Bankruptcy Code determines rights as of the date of the filing
of the bankruptcy petition).

TENN. CODE ANN. § 47-9-515 (Off. Cmts.).  The Plaintiff's rights and powers as Chapter 7

Trustee were established as of the date of filing, but defined under state law.  *See* 11

U.S.C.A. § 544(a).  Because trustees in bankruptcy are armed with the rights of lien

17

creditors under § 544(a) and are not purchasers for value,[10] the fact that three of the

Defendant's UCC-1 Financing Statements lapsed during the pendency of the bankruptcy case

does not change the priority scheme as between the Defendant and the Plaintiff.[11]

Based upon the foregoing, the Defendant is entitled to relief from the automatic stay

to permit it to enforce its liens encumbering the Equipment or, to the extent all or a portion

of the Equipment has been sold, to realize the proceeds free from any claim of the Plaintiff.[12]

The Defendant has also requested an order directing the Plaintiff to abandon the Equipment.

As part of her duties as Chapter 7 Trustee, the Plaintiff is authorized to "abandon any

---

[10] Section 544(a)(3) does provide the trustee with the rights of a bona fide purchase of real property, but not of personal property.  *See* 11 U.S.C.A. § 544(a)(3).  This subsection does not, therefore, have application to the present matters.

[11] The lapse is of no consequence to the Defendant with respect to its priority as against the Plaintiff because, "[u]nder the 'strong arm' provisions of 11 U.S.C. § 544(a)(1), the Trustee stands in the shoes of a lien creditor whose liens arose as of the petition date."  *In re Hurst*, 308 B.R. 298, 301 (Bankr. S.D. Ohio 2004). As of the petition date, all of the Defendant's liens were perfected, and it enjoyed a superior priority over the Plaintiff with respect to the Equipment.  Accordingly, the Plaintiff's priority was set as of December 2, 2002, and, as exemplified in the Official Comments, even upon lapse of the UCC-1 Financing Statements, her priority is subordinate to the Defendant:

> 3.  Lapse.  When the period of effectiveness under subsection (a) or (b) expires, the effectiveness of the financing statement lapses.  The last sentence of subsection (c) addresses the effect of lapse.  The deemed retroactive unperfection applies only with respect to purchasers for value, unlike former section 9-403(2) [§ 47-9-403(2)], it does not apply with respect to lien creditors.
>
> . . . .
>
> Example 2:  SP holds a security interest perfected by filing.  On July 1, LC acquires a judicial lien on the collateral.  Two weeks later, the effectiveness of the financing statement lapses. Although the security interest becomes unperfected upon lapse, it was perfected when LC acquired its lien.  Accordingly, notwithstanding the lapse, the perfected security interest has priority over the rights of LC, who is not a purchaser.   See section 9-317(a)(2) [§ 47-9-317(a)(2)].

TENN. CODE ANN. § 47-9-515 (Off. Cmts.).

[12] *See supra* n.6.

18

property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.A. § 554(a) (West 2004). If the Trustee does not abandon such property, she may be ordered to do so upon the request of a party in interest, provided that party in interest meets its burden of proof and presents a *prima facie* case that the property is burdensome to the estate or of inconsequential value. 11 U.S.C.A. § 554(b) (West 2004); *In re Dillon*, 219 B.R. 781, 785 (Bankr. M.D. Tenn. 1999). In determining whether to order abandonment, the court should focus on "whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be removed therefrom." *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987) (quoting *In re Tyler*, 15 B.R. 258, 261 (Bankr. E.D. Pa. 1981)).

Nevertheless, "'where the estate has no equity in a particular property, and the estate is to be liquidated, abandonment will virtually always be appropriate because no unsecured creditor could benefit from its administration." *In re Beaudoin*, 160 B.R. 25, 31 (Bankr. N.D.N.Y. 1993) (quoting *In re Ayers*, 137 B.R. 397, 401 (Bankr. D. Mont. 1992) (quoting *In re Paolella*, 79 B.R. 607, 609-10 (Bankr. E.D. Pa. 1987)). Although a lack of equity generally "sets forth a prima facie case that the property is of inconsequential value and benefit to the estate [in liquidation cases, the] prima facie case can be rebutted, e.g., by proof that the secured creditor's liens can be subordinated to an interest of the trustee, or possibly by establishing that some other form of value or benefit would accrue to the estate by retention of the property." *Beaudoin*, 160 B.R. at 31-32 (citing *Paolella*, 79 B.R. at 610)).

As previously determined, the Plaintiff's interest in the Equipment is subordinate to the Defendant's security interests therein.    Accordingly, the Plaintiff will be directed, pursuant to § 554(b), to abandon the estate's interest in the Equipment, and the court's Order shall constitute the abandonment.[13]

An order consistent with this Memorandum will be entered.

FILED:

                                    BY THE COURT

                                    /s/  RICHARD STAIR, JR.

                                    RICHARD STAIR, JR.
                                    UNITED STATES BANKRUPTCY JUDGE

---

[13] The parties did not stipulate the amount of the Defendant's claim secured by the Equipment nor did they stipulate the value of the Equipment.  In its Motion for Relief, the Defendant avers that it has a claim in the amount of $236,972.16 and that the value of the Equipment is $220,500.00.  The Plaintiff does not dispute these amounts in her Objection to Motion to Modify Automatic Stay and Abandon Property filed on April 19, 2004.  As no valuation issue has been raised by the Plaintiff, the court presumes that the Defendant is undersecured and that the Equipment is, in fact, burdensome to the estate, because it has no value in excess of the Defendant's liens.